```
                    UNITED STATES DISTRICT COURT
                     MIDDLE DISTRICT OF FLORIDA
                        FORT MYERS DIVISION
```

MICHAEL EDWARD BUFKIN,

    Plaintiff,

v.                                      Case No: 2:17-cv-281-FtM-29CM

SCOTTRADE, INCORPORATED, JACOB J. LEW, TIMOTHY F. GEITHNER, JOHN KOSKINEN, DOUGLAS SHULMAN, STEVEN T. MILLER, DANIEL WERFEL, WILLIAM J. WILKINS, C.D. BAILEY, CALVIN BYRD, individually, and UNITED STATES OF AMERICA,

    Defendants.

---

## **OPINION AND ORDER**

This matter comes before the Court on Scottrade, Inc.'s Motion to Compel Arbitration and to Stay or Dismiss the Proceedings Against Scottrade, Inc. Pending Arbitration (Doc. #20) filed on September 1, 2017. Plaintiff filed a Response (Doc. #29), and Scottrade, Inc. (Scottrade) filed a Reply in Support (Doc. #53) with leave of Court.

Plaintiff asserts only one claim of breach against Scottrade in his Complaint (Doc. #1). The remaining claims all pertain to the United States and those named individually and officially. Plaintiff alleges that Scottrade sold his shares of both Sprott Silver Fund and Sprott Gold Fund, and transferred the proceeds to

the Internal Revenue Service (IRS) in May 2013. (Doc. #1, ¶¶ 16-17.) Plaintiff alleges that Scottrade breached their contract by selling the shares at the request of the IRS who is not authorized on his trading account, and by transferring the proceeds of those sales to the IRS without his authorization. (Id., ¶¶ 20-22.) Plaintiff asserts that he did not volunteer to be a taxpayer for any purported taxes, and that he provided no Tax Identification Number. Plaintiff alleges that Scottrade should have demanded proof from the IRS of his volunteering to pay taxes. (Id., ¶¶ 25, 27.) Plaintiff states that he specifically crossed out Tax ID Number on his application for a Scottrade account, and only provided a Social Security Number. (Id., ¶ 18.) Plaintiff seeks restoration of the Scottrade account, a principal amount of damages in the amount of $380,108.00 for the breach, and pre- and post judgment interest. (Id., ¶¶ 23, 138.)

**A. The Agreement**

The first page of the Scottrade Brokerage Account Application (Doc. #1-1) for a traditional IRA account was signed in 2010, and is attached to the Complaint. Above the signature line of the first page is the following statement in all capital letters:

> BY SIGNING THIS AGREEMENT I ACKOWLEDGE THAT I HAVE RECEIVED, READ AND AGREE TO ABIDE BY THE TERMS OF THE ACCOMPANYING BROKERAGE ACCOUNT AGREEMENT WHICH CONTAINS A PRE-DISPUTE ARBITRATION CLAUSE AT PARAGRAPH 29.

(Doc. #1-1, P-1.) An Account Transfer Form is also attached. (Id.) The full Terms and Conditions (Doc. #20-1, Exh. B) of the Brokerage Account Agreement are attached to Scottrade's motion by way of Affidavit of Harry Carr (Doc. #20-1, Exh. 1), a Senior Paralegal and Records custodian with Scottrade who reviews such agreements in the regular course of his business. The arbitration terms are set forth in paragraphs 28 and 29 as follows:

> 28. Arbitration Disclosures. This Agreement contains a predispute arbitration clause. By signing this Agreement, the parties agree as follows:
>
> (A) All parties to this Agreement are giving up the right to sue each other in court, including the right to a trial by jury, except as provided by the rules of the arbitration forum in which a claim is filed.
>
> (B) Arbitration awards are generally final and binding: a party's ability to have a court reverse or modify an arbitration award is very limited.
>
> (C) The ability of the parties to obtain documents, witness statements and other discovery is generally more limited in arbitration than in court proceedings.
>
> (D) The arbitrators do not have to explain the reason(s) for their award.
>
> (E) The panel of arbitrators will typically include a minority of arbitrators who were or are affiliated with the securities industry.
>
> (F) The rules of some arbitration forums may impose time limits for bringing a claim in arbitration. In some cases, a claim that is ineligible for arbitration may be brought in court.

> (G) The rules of the arbitration forum in which the claim is filed, and any amendments thereto, shall be incorporated into this agreement.
>
> 29. Agreement to Arbitrate Controversies. You agree that any controversy, dispute, claim, or grievance between us, any of our affiliates or our or their shareholders, officers, directors employees, associates, or agents, on the one hand, and you or, if applicable, your shareholders, officers, directors employees, associates, or agents on the other hand, arising out of, or relating to, this Agreement, or any service provided by us, including transactions of any kind made on your behalf through us, shall be resolved by arbitration, in accordance with the rules of the Financial Industry Regulatory Authority (FINRA). If you are not a resident of the United States at the time a controversy subject to arbitration arises, you agree that any arbitration hearing shall be held in St. Louis, Missouri; you consent to the personal jurisdiction of all courts located in the State of Missouri for purposes of enforcing this arbitration agreement and any arbitration award; and you agree that any arbitration proceeding shall be conducted in the English language. If any party unsuccessfully resists confirmation or enforcement of an arbitration award rendered under this agreement, then all costs, attorneys' fees, and expenses incurred by the other party or parties in confirming or enforcing the award shall be fully assessed against and paid by the party resisting confirmation or enforcement of the award.

(Doc. #20-1.)

   **B. Arbitration**

Under the Arbitration Act, a written provision in a contract involving commerce to settle by arbitration "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at

law or in equity for the revocation of any contract." 9 U.S.C. § 2. Thus, there is a strong federal policy of favoring arbitration, and agreements to arbitrate should be "rigorously enforce[d]" by the courts. Lawson v. Life of the S. Ins. Co., 648 F.3d 1166, 1170 (11th Cir. 2011) (citations omitted). Determining whether to compel arbitration is a matter of contract, and the Court applies state contract law to determine if a clause should be enforced. Id. In this case, plaintiff alleges a breach of the contract, and does not dispute the validity of the arbitration clause.

More specifically, plaintiff does not dispute the terms and conditions of the agreement, or that there is a pre-dispute arbitration requirement in the Brokerage Account Agreement. Rather, plaintiff argues that the dispute is not subject to arbitration because FINRA "concluded" that the matter was not arbitrable because it is a tax issue. Attached to plaintiff's Response is correspondence with FINRA stating plaintiff's intent to file a claim. In a letter dated June 4, 2014, from a Case Assistant with FINRA to plaintiff, she stated:

> FINRA Dispute Resolution only administers arbitrations that involve disputes arising in connection with the business activities of FINRA . . . . The Department of Treasury, the Secretary of the Treasury, and the Commissioner of the Internal Revenue Service are not member firms and, as such, we regret that, at this time, we are unable to offer our

> forum to parties *other than the member firms*.
>
> . . .
>
> Should you wish to proceed with your arbitration claim against Scottrade, please file, with this office, an Amended Statement of Claim wherein you remove all parties except for Scottrade.

(Doc. #29-5, FINRA-5) (emphasis added). The letter clearly states that plaintiff may proceed against Scottrade, but without the United States parties who are not subject to arbitration or parties to the Brokerage Account Agreement. The Court finds that plaintiff's claim for breach of the written Brokerage Account Agreement is subject to the arbitration clause.

Plaintiff also argues that arbitration should not be compelled because the breach of contract claim cannot be severed from the claims against the United States and the individual defendants, and Scottrade's motion is actually trying to sever the claims. The Court rejects this argument. Compelling arbitration for a breach of the Brokerage Account Agreement with one defendant has no direct bearing on plaintiff's claims against the other defendants regarding his taxpayer status. "[T]he Arbitration Act requires district courts to compel arbitration of pendent arbitrable claims when one of the parties files a motion to compel, even where the result would be the possibly inefficient maintenance of separate proceedings in different forums." <u>Dean Witter Reynolds, Inc. v. Byrd</u>, 470 U.S. 213, 217 (1985). Pursuant to 9

U.S.C. § 3, the case will be stayed as to Scottrade pending arbitration under the Brokerage Account Agreement.

Accordingly, it is hereby

**ORDERED:**

1. Scottrade, Inc.'s Motion to Compel Arbitration and to Stay or Dismiss the Proceedings Against Scottrade, Inc. Pending Arbitration (Doc. #20) is **GRANTED.**

2. Plaintiff and Scottrade shall proceed with arbitration pursuant to the terms of the Brokerage Account Agreement, and this case is **STAYED** as to Scottrade pending further and notification that the stay is due to be lifted, and the case dismissed as to Scottrade.

3. Scottrade shall file a status report **on or before December 3, 2018**, if the arbitration is not complete, or a notification has not been filed by this date.

**DONE and ORDERED** at Fort Myers, Florida, this ___29th___ day of November, 2017.

_____
JOHN E. STEELE
SENIOR UNITED STATES DISTRICT JUDGE

Copies:
Plaintiff
Counsel of Record